UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MARK FIDELMAN; and C.F., a minor,
Plaintiffs,

v.

KEVIN POLIS; KELLY FIDELMAN; PATRICIA CLEARY; RICHARD LAYON; MATT ALBEE; JEFFREY B. BARTON; STATE OF CALIFORNIA; and DOES 1–10,
Defendants.

Case No.: 23-CV-417 TWR (MMP)

**ORDER (1) GRANTING DEFENDANTS POLIS, LAYON, CLEARY, KELLY FIDELMAN, BARTON, AND ALBEE'S MOTIONS TO DISMISS; (2) DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CAUSES OF ACTION; AND (3) DENYING AS MOOT (a) DEFENDANTS POLIS, LAYON, CLEARY, FIDELMAN, AND ALBEE'S ANTI-SLAPP MOTIONS, AND (b) PLAINTIFF MARK FIDELMAN'S REQUEST FOR ELECTRONIC FILING STATUS**

(ECF Nos. 5, 6, 7, 15, 38, 46, 50)

Presently before the Court are the Motions to Dismiss and Special Motions to Strike pursuant to California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") law, California Code of Civil Procedure § 425.16, filed by Defendants Kevin Polis ("Polis Mot.," ECF No. 5), Richard Layon ("Layon Mot.," ECF No. 6), Patricia

Cleary ("Cleary Mot.," ECF No. 7), Kelly Fidelman ("Kelly Mot.,"[1] ECF No. 15), Judge Jeffrey B. Barton (Ret.) ("Barton Mot.," ECF No. 38), and Matt Albee ("Albee Mot.," ECF No. 46) (together, the "Motions"), as well as Plaintiff Mark Fidelman's unopposed Request for Electronic Filing Status PACER CM/ECF Approval ("E-filing Mot.," ECF No. 50). After Plaintiffs Mark and his minor son, C.F., filed an untimely Opposition to the Polis, Layon, Cleary, and Kelly Motions,[2] (*see* ECF No. 20 ("Initial Opp'n")), the Court permitted the Defendants Polis, Layon, Cleary, and Kelly the opportunity to file substantive replies, (*see* ECF No. 31). (*See also* ECF Nos. 34 ("Cleary Reply"), 35 ("Kelly Reply"), 36 ("Layon Reply"), 37 ("Polis Reply").) Also before the Court are Plaintiffs' Opposition to ("Barton Opp'n," ECF No. 44) and Judge Barton's Reply in Support of ("Barton Reply," ECF No. 48) the Barton Motion, as well as Plaintiffs' Opposition to ("Albee Opp'n," ECF No. 49) and Albee's Reply in Support of ("Albee Reply," ECF No. 51) the Albee Motion.

The Court took the Motions under submission on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF Nos. 13 at 3, 39, 47.) Having carefully reviewed the Complaint ("Compl.," ECF No. 1), those matters properly subject to judicial notice or incorporated by reference, the Parties' arguments, and the relevant law, the Court **GRANTS** Defendants' Motions to Dismiss; **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' state law causes of action; and **DENIES AS MOOT** the Anti-SLAPP Defendants Polis, Layon, Cleary, Kelly, and Albee's Anti-SLAPP Motions and Mark's E-filing Motion.

/ / /

/ / /

/ / /

---

[1] Although the Court generally refers to Parties by their last names, to avoid confusion, the Court refers to Defendant Kelly Fidelman as "Kelly" and Plaintiff Mark Fidelman as "Mark."

[2] Although the Court would be within its discretion to grant Defendants' Motions as unopposed, *see* S.D. Cal. CivLR 7.1(f)(3)(c); Standing Order for Civil Cases § III.A.2, it is the Court's preference to dispose of all matters on the merits.

## BACKGROUND

### I. The Underlying Family Court Matter[3]

In 2018, Plaintiff Mark and his now ex-wife, Defendant Kelly, began "a contentious dissolution and child custody proceeding" in the Superior Court of California, County of San Diego, *Kelly Fidelman v. Mark Fidelman*, No. 18FL012451N (Cal. Super. filed Oct. 19, 2018). (*See* Compl. ¶¶ 13, 16, 23.) Kelly was represented by Defendants Cleary and Layon, (*see id.* ¶¶ 17–18, 24), while Defendant Polis was appointed as minor's counsel to Mark and Kelly's minor son, Plaintiff C.F. (*See id.* ¶¶ 14–15; *see also* ECF No. 5-3 ("Polis Ex. 1") ¶ 1.)

On October 19, 2018, Kelly filed a request for a temporary restraining order and petition for dissolution of marriage against Mark. (*See* ECF No. 6-3 ("Layon Decl.") ¶ 3.) Judge Brad A. Weinreb held an evidentiary hearing and granted Kelly an initial, one-year Domestic Violence Restraining Order ("DVRO") on November 27, 2018 (the "1st DVRO"). (*See id.*; *see also* ECF No. 6-4 at 4–10 ("Layon Ex. 1").)

In December 2018, Mark filed his own request for a temporary restraining order in the Central District of Los Angeles, which was granted. (*See* Layon Decl. ¶ 4.) Kelly, in turn, filed a motion for change of venue to San Diego, which was granted on February 11, 2019. (*See id.* ¶ 5.)

On October 5, 2019, Mark drove C.F. to Kelly's house to obtain the pink socks C.F. needed to play in a breast cancer awareness football game. (*See* ECF No. 7-3 at 2–18

---

[3] The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (collecting cases). The Court also may incorporate by reference the Second DVRO (Layon Exhibit 2); the transcript of the March 5, 2020 hearing (Cleary Exhibit 1); the Special Master's Reports recommending denial of Mark's subpoenas related to Kelly's computer and Judge Freeland's Orders adopting the Special Master's Reports as orders of the court (Cleary Exhibits 2 and 3); Judge Barton's Findings and Order After Hearing of 9/10/2020 (Layon Exhibit 3); and the Statement of Minor's Counsel (Polis Exhibit 1) because Mark's Complaint refers extensively to them and they form the basis of his claims. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

("Cleary Ex. 1") at 11:18–23; *see also* Compl. ¶¶ 25–26.) While at Kelly's house, C.F. took Kelly's work computer. (*See* Compl. ¶ 26.) Although Mark claims that he never accessed Kelly's work computer, (*see id.* ¶ 27), Kelly's expert, Defendant Albee, examined a cloned hard drive and opined that Kelly's work computer had been hacked while it was in Mark's possession. (*See id.* ¶ 34; *see also* Cleary Ex. 1 at 12:2–7.)

On January 29 and 30, 2020, Mark attempted to subpoena Kelly and Cleary for Kelly's computer, as well as external storage devices, cellular devices, and tablets. (*See* ECF No. 7-4 ("Cleary Ex. 2") at 3–5.) By report dated February 6, 2020, the Special Master recommended that the Honorable Cynthia Freeland find the subpoenas to be invalid. (*See generally id.* at 3–7.) Judge Freeland adopted the Special Master's Report on August 10, 2020. (*See id.* at 2.)

Meanwhile, on March 5, 2020, Defendant Judge Barton held a hearing on Mark's and Kelly's respective requests for a DVRO. (*See generally* Cleary Ex. 1.) He described the matter as "a high-conflict divorce case," (*see id.* at 4:1–2), that was "harming [their] children," (*see id.* at 4:5–7), and C.F. in particular. (*See id.* at 4:14–5:4.) With respect to Mark's request for a DVRO, Judge Barton found "significant problems," (*see id.* at 8:5–7), including inconsistencies in Mark's testimony, (*see id.* at 9:4–10:24), and filing under circumstances that "smack[ed] of forum shopping," (*see id.* at 9:3), and was "inconsistent with true fear or reasonable fear on [Mark's] part." (*See id.* at 8:21–24.) As for Kelly's request for a renewal of the First DVRO based on Mark's hacking of her computer, Judge Barton found that Kelly had carried her burden in establishing an incident of cyberstalking on October 5 and 6, 2019. (*See id.* at 11:18–13:7.) Judge Barton therefore renewed the First DVRO for a period of one year (the "2d DVRO"). (*See id.* at 13:20–21; *see also* ECF No. 6-4 at 11–17 ("Layon Ex. 2").)

On April 30, 2020, Mark issued a subpoena to Albee for production of the devices and documents Albee reviewed in preparing his expert report. (*See* ECF No. 7-5 ("Cleary Ex. 3") at 17.) In a report dated May 28, 2020, the Special Master recommended that Judge

/ / /

Freeland find the subpoena untimely, irrelevant, and improper. (*See id.* at 17–18.) Judge Freeman adopted the report as the order of the Court on August 10, 2020. (*See id.* at 2.)

Mark appealed the Second DVRO on May 26, 2020, (*see* ECF No. 7-8 ("Cleary Ex. 6")), but the appeal was abandoned and closed on July 31, 2020. (*See* ECF No. 7-6 ("Cleary Ex. 4").)

Following a hearing on September 10, 2020, Judge Barton denied Mark's motion seeking reconsideration of the Second DVRO on October 20, 2020. (*See* ECF No. 6-4 at 18–20 ("Layon Ex. 3").) Mark filed an appeal on September 15, 2020, (*see* ECF No. 7-9 ("Cleary Ex. 7"), which was dismissed as untimely or taken from a non-appealable order on December 23, 2020. (*See* ECF No. 7-7 ("Cleary Ex. 5").)

On April 6, 2021, in response to Mark's notice of deposition of C.F. and inclusion of C.F. on his witness list for a DVRO hearing, Polis filed a "Statement of Minor's Counsel, Kevin A. Polis, CLS-F, in Support of Ex Parte Relief and Motion for Protective Order, and Sanctions." (*See generally* Polis Ex. 1.) Polis noted that he "ha[d] informed [Mark] on multiple occasions that taking [C.F.]'s deposition on issues related to a domestic violence restraining order . . . between his parents, custody, and visitation is not in [C.F.]'s best interests." (*See id.* ¶ 9.) Polis added that he "would be very concerned that any proceeding (i.e.[,] a deposition, without this court being <u>directly</u> involved) that concern[s] these minor children is not a good idea and . . . is detrimental to the children" because "[t]his is a tremendously litigious case." (*See id.* ¶ 10 (emphasis in original).) Although Polis noted that C.F. wanted to testify and be deposed, (*see id.* ¶¶ 16–17), Polis explained that—as minors' counsel—he was "attempting to limit [C.F.]'s involvement with these legal proceedings and to limit his involvement in adult matters." (*See id.* ¶ 14.)

Kelly obtained a permanent second Renewed DVRO from Judge Barton on May 11, 2021 (the "3d DVRO"). (*See* ECF No. 6-4 at 21–28 ("Layon Ex. 4").)

## II. The Alleged Conspiracy

According to Mark, Kelly and her attorneys saw C.F.'s taking of Kelly's work computer as "a golden opportunity to destroy the family unity between Mark and [C.F.]

and to enrich themselves monetarily by committing judicial deception." (*See* Compl. ¶ 28.) Mark contends they decided to use a fabricated hacking incident to obtain a DVRO, which carries with it a strong presumption against child custody. (*See id.*)

Mark claims that Polis secured appointment as minor's counsel by promising Judge Barton that Polis's firm, Moore, Schulman & Moore ("MSM"), would repeatedly hire Judge Barton when he retired and joined Judicate West. (*See id.* ¶ 31.) In turn, Judge Barton assured Polis that Mark would be ordered to pay him substantial fees. (*See id.*) Meanwhile, Kelly and her attorneys instructed Polis to indicate that it was not in C.F.'s best interest to testify, despite the fact that C.F. wanted to testify. (*See id.* ¶ 30; *see also id.* ¶ 37.)

Meanwhile, Kelly retained Defendant Albee, a purported computer expert, who initially claimed to have examined Kelly's work computer, but later changed his story and claimed to have examined a "cloned" hard drive. (*See id.* ¶ 34.) Albee testified that he had discovered a computer log showing that Kelly's work computer had been hacked during the time that the computer was in Mark's possession. (*See id.*) That computer log, however, was fabricated. (*See id.* ¶ 35.) Nonetheless, Judge Barton accepted the computer log and used it to conclude that Mark had engaged in cyberstalking, a form of domestic abuse. (*See id.* ¶ 38.)

When Mark attempted to obtain his own evidence by examining Kelly's work computer, Judge Barton quashed Mark's subpoena. (*See id.* ¶ 39.) Mark also attempted to defend himself by offering C.F. as a witness, but—on Polis's recommendation—Judge Barton did not allow C.F. to testify. (*See id.* ¶¶ 36–37.)

Judge Barton granted Kelly a DVRO against Mark. (*See id.* ¶ 41.) As a result, Mark lost custody of C.F. (*See id.* ¶ 42.)

## III. The Instant Litigation

Mark instituted this action against the State of California (the "State") and Individual Defendants Polis, Layon, Cleary, Kelly, Judge Barton, and Albee on March 6, 2023, alleging six causes of action for (1) conspiracy to commit judicial deception and judicial

deception in a child custody proceeding in violation of the Fourteenth Amendment right to family unity pursuant to 42 U.S.C. §§ 1983 and 1985(2) and (3) against the Individual Defendants, (2) facial challenge to the residual definition of "abuse" in California Family Code §§ 6203 and 6320 under the First and Fourteenth Amendments against the State, (3) as-applied challenge to the residual definition of "abuse" in California Family Code §§ 6203 and 6320 under the First and Fourteenth Amendments against the State, (4) as-applied challenge to gun ban on non-violent persons in California Family Code § 6389 under the Second Amendment against the State, (5) intentional infliction of emotional distress against the Individual Defendants, and (6) negligent infliction of emotional distress against the Individual Defendants. (*See generally* Compl.) Following the recusal of the Honorable Janis L. Sammartino, (*see* ECF No. 3), and William Q. Hayes, this action was reassigned to the undersigned. (*See* ECF No. 4.)

At the end of March, Defendants Polis, Layon, and Cleary filed their Motions to Dismiss and to Strike, (*see* ECF Nos. 5, 6, 7), and Mark moved for electronic filing privileges. (*See* ECF No. 11.) On April 3, 2023, the Court ordered the Parties to redact C.F.'s full name in compliance with General Order 514-E, denied without prejudice Mark's request for electronic filing privileges through CM/ECF, and set a briefing schedule for the pending motions to dismiss and any other motions filed before May 18, 2023. (*See generally* ECF No. 13.) The Court explicitly warned Mark that, "[a]s noted in Section III.A.2 of the undersigned's Standing Order for Civil Cases, *'[a]n opposing party's failure timely to file an opposition to any motion may be construed as consent to the granting of the motion pursuant to Civil Local Rule 7.1(f)(3)(c).'*" (*See id.* at 2 (emphasis in original).) Kelly filed her motion a few days later. (*See* ECF No. 15.)

Despite the Court's explicit deadline and warning, (*see* ECF No. 13 at 2), Mark filed his Initial Opposition two weeks late, on the Court-ordered reply deadline, (*see generally* ECF No. 20), together with a renewed motion for electronic filing privileges. (*See* ECF No. 19.) On June 29, 2023, the Court denied without prejudice Mark's renewed request

/ / /

for electronic filing privileges and granted Defendants Polis, Layon, Cleary, and Kelly leave to file optional reply briefs. (*See* ECF No. 31.)

On July 3, 2023, Mark moved for the Clerk to enter default against the State. (*See* ECF No. 32.) The Court denied without prejudice Mark's motion on the grounds that he had failed properly to serve the State through its Attorney General. (*See* ECF No. 33 at 1–3.) The Court also ordered Mark to show cause why his action should not be dismissed without prejudice as to the State for failure timely to effect service of process and lack of subject-matter jurisdiction under the Eleventh Amendment. (*See id.* at 4.) Because Mark failed timely to respond to the Court's July 7, 2023 Order to Show Cause, the Court dismissed without prejudice Defendant the State of California on July 31, 2023. (*See* ECF No. 41.)

In the meantime, Judge Barton moved to dismiss on July 24, 2023, (*see* ECF No. 38), and Albee moved to dismiss on August 16, 2023, (*see* ECF No. 46).

## SUBJECT-MATTER JURISDICTION

### I. Legal Standard

A party may challenge the court's subject-matter jurisdiction through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White*, 227 F.2d at 1242. "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all

reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

"A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* (citing *Safe Air for Everyone*, 373 F.3d at 1039; *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof[]'" and "prov[e] by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)). "With one caveat, if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1121–22 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Thornhill Publ'g*, 594 F.2d at 733). "The caveat is that a court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1122 n.3 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40; *Augustine*, 704 F.2d at 1077).

## II. Analysis

### A. *Rooker-Feldman* Doctrine

As an initial matter, Defendants Cleary and Judge Barton argue that the court lacks subject-matter jurisdiction over Plaintiffs' first cause of action under the *Rooker-Feldman* doctrine. (*See* ECF No. 7-1 ("Cleary Mem.") at 14–15; ECF No. 38-1 ("Barton Mem.") at 5–6.) The Court must resolve such jurisdictional challenges before reaching any challenges to the sufficiency of Plaintiffs' claims. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

"The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 . . . (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S.

462 . . . (1983)." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). "*Rooker-Feldman* is a statute-based doctrine, based on the structure and negative inferences of the relevant statutes rather than on any direct command of those statutes." *Id.* at 1154–55 (citing *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir.2000) (*en banc*)). "Under *Rooker-Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Id.* at 1154. In other words, "when a losing plaintiff in state court brings a suit in federal district court asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." *See id.* at 1156; *see also id.* at 1163, 1164. "A federal district court . . . must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Id.* at 1158. "On the other hand, where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.* at 1163; *see also id.* at 1164.

Cleary and Judge Barton contend that the *Rooker-Feldman* doctrine applies here because Mark can only succeed on his causes of action in this Court to the extent that Judge Barton wrongly decided not to allow C.F. to testify, to allow testimony from Kelly's expert, to quash Mark's subpoena, and to grant the DVRO. (*See* Cleary Mem. at 14–15; Barton Mem. at 5–6.) Mark failed to oppose Cleary's argument, (*see generally* Initial Opp'n), but does argue in his Opposition to Judge Barton's Motion that "it is abundantly clear that Plaintiff is not asking this Court to review, strike, void, or modify the state court Judgment in any way." (*See* Barton Opp'n at 13; *accord id.* at 14.)

Mark is correct—"*Rooker-Feldman* applies only when the plaintiff seeks both to assert a legal wrong stemming from state court proceedings and to overturn the state court decision in an impermissible *de facto* appeal." *Lahey v. Contra Costa Cnty. Dep't of Child. & Fam. Servs.*, No. C01-1075 MJJ, 2004 WL 2055716, at *9 (N.D. Cal. Sept. 2, 2004) (citing *Noel*, 341 F.3d at 1164). As Cleary and Judge Barton themselves recognize, (*see* Cleary Mem. at 15; Barton Mem. at 5–6), "[i]n this case, Plaintiffs attempt the former but

not the latter." *See Lahey* 2004 WL 2055716, at *9; (*see also, e.g.*, Compl. ¶ 9; *id.* Prayer). "They attempt to demonstrate a series of legal wrongs perpetrated by Defendants that led to several unfavorable . . . decisions, but Plaintiffs do not seek in this suit to overturn the [decisions]." *See Lahey* 2004 WL 2055716, at *9. Consequently, "[e]ven though a favorable decision in federal court would undermine the credibility of the state court decision, the *Rooker-Feldman* doctrine, as recently explained by the Ninth Circuit in *Noel,* does not bar jurisdiction in this case." *See id.* The Court therefore **DENIES** Cleary's and Judge Barton's Motions to the extent they challenge the Court's subject-matter jurisdiction under the *Rooker-Feldman* doctrine.

**B. Standing as to Claims Against Judge Barton**

Mark does not seek damages from Judge Barton, (*see* Compl. ¶¶ 142–44 ("Damages are *not* sought against Defendant Jeffrey B. Barton.")), and none of the injunctive or declaratory relief he seeks concerns Judge Barton. (*See id.* ¶¶ 145–49.) Judge Barton therefore contends that dismissal is required under Federal Rule of Civil Procedure 8(a)(3), which provides that "[a] pleading that states a claim for relief must contain[] . . . a demand for the relief sought, which may include relief in the alternative or different types of relief."

The Court construes this argument as one regarding Article III standing, which requires Mark to demonstrate that he "has (1) suffered an injury that (2) was caused by the defendant and (3) is likely to be redressed by the relief []he seeks." *See Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1036–37 (9th Cir. 2006) (citing *Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004)). Mark concedes that his operative Complaint does not include a demand for relief from Judge Barton, instead arguing that he "certainly intended to seek relief against Judge Barton" and that the Court should grant him leave to amend so that he may add those demands. (*See* Barton Opp'n at 20–22.) Because Mark fails to plead an injury that is redressed by the relief he seeks from Judge Barton, the Court **GRANTS** Judge Barton's Motion and **DISMISSES** Mark's claims against him for failure to establish standing.

/ / /

## MOTIONS TO DISMISS

### I. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

/ / /

Federal "Rule [of Civil Procedure] 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (alteration in original) (internal quotation mark omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## II. Analysis

### *A. C.F.'s Claims*

Defendants Polis and Cleary contend that C.F., who was a minor when this action was filed, (*see* Compl. ¶ 14), lacks capacity to sue on his own and that Mark is not an appropriate guardian *ad litem* and, as a non-attorney, cannot appear on C.F.'s behalf. (*See* ECF No. 5-1 ("Polis Mem.") at 3–4; Cleary Mem. at 7–8.) Mark concedes that dismissal without prejudice is appropriate as to claims brought by C.F. or by Mark on C.F.'s behalf. (*See* Initial Opp'n at 27.) The Court therefore **GRANTS** Polis's and Cleary's Motions and **DISMISSES WITHOUT PREJUDICE** C.F. as a Plaintiff.

/ / /

/ / /

***B. First Cause of Action***

Mark's first cause of action, which is his sole surviving federal cause of action,[4] alleges conspiracy to commit judicial deception and violation of Mark's Fourteenth Amendment right to family unity under 42 U.S.C. §§ 1983 and 1985(2)–(3). (*See* Compl. ¶¶ 52–89.) Defendants Polis, Layon, Cleary, Kelly, Judge Barton, and Albee move to dismiss on several grounds.

*1. Failure to State a Claim*

Defendants Polis, Cleary, Kelly, Judge Barton, and Albee contend that Mark's first cause of action must be dismissed under Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to state a claim. (*See* Polis Mem. at 7–9; Cleary Mem. at 10–12; ECF No. 15-1 ("Kelly Mem.") at 4–7; Barton Mem. at 8–10; Albee Mem. at 4–5.)

a. 42 U.S.C. § 1983

The Parties agree that, "[t]o state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (quoting *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988))); (*see also* Compl. ¶ 53; Polis Mem. at 7; Cleary Mem. at 11; Kelly Mem. at 4; Barton Mem. at 8; Albee Mem. at 4). Where, as here, a Section 1983 claim is brought under the Fourteenth Amendment, the plaintiff must also allege a state action. *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). "[C]onduct

---

[4] As discussed above, *see supra* pages 5–7, Mark originally asserted additional federal causes of action against the State of California. (*See* Compl. ¶¶ 90–120.) After Mark sought entry of default against the State, (*see* ECF No. 32), the Court ordered Mark to show cause why his claims against the State should not be dismissed for failure timely to effect service of process and for lack of subject-matter jurisdiction under the Eleventh Amendment. (*See* ECF No. 33 at 4.) Because Mark failed to respond to the Order to Show Cause, the Court dismissed without prejudice Defendant the State of California on July 31, 2023. (*See* ECF No. 41; *see also* Barton Opp'n at 21.) Accordingly, Mark's second through fourth causes of action are no longer pending.

satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law." *Id.* at 935 n.18.

The Ninth Circuit also has "recognized a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free from judicial deception and fabrication of evidence in the context of civil child custody cases." *Benavidez*, 993 F.3d at 1146 (citing *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108 (9th Cir. 2010); *Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000)). "To successfully allege a violation of the constitutional right to be free from judicial deception, [a plaintiff] must make out a claim that includes (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Id.* at 1148 (citing *Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir. 2009), *vacated in different part*, 563 U.S. 692, and *vacated in different part*, 661 F.3d 1201 (9th Cir. 2011)). "To state a conspiracy claim under § 1983, a plaintiff must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012) (first citing *Garcia v. Grimm*, No. 1:06-cv-225-WQH (PCL), 2011 WL 817426, at *9 (S.D. Cal. Mar. 2, 2011); then citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999)). Claims for judicial deception must comply with the particularity requirements of Rule 9(b). *See Benavidez*, 993 F.3d at 1148.

Defendants Polis, Cleary, Kelly, and Albee raise two main arguments concerning the sufficiency of Mark's Section 1983 claim: First, Mark fails to allege the existence of a conspiracy with the requisite particularity, (*see* Polis Mem. at 5–9; Cleary Mem. at 10–11; Albee Mem. at 4–5), and second, Mark fails to allege that the challenged conduct constitutes state action, (*see* Polis Mem. at 7; Cleary Mem. at 11–12; Kelly Mem. at 5–7, 9; Albee Mem. at 4). Judge Barton separately contends that Mark's Section 1983 claim must be dismissed because Mark fails to allege that he is entitled to any relief against Judge Barton. (*See* Barton Mem. at 9–10.)

/ / /

i. Rule 9(b)

"To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dep't of Social & Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)). Specifically, a plaintiff must "plead[] with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights, even though he does not identify which [conspirator] said or did what at which particular time." *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997). Defendants Polis, Cleary, and Albee contend that Mark fails to meet this standard. (*See* Polis Mem. at 5–6; Cleary Mem. at 10–11; Albee Mem. at 4–5.)

Here, the alleged conspiracy hinges on the following facts: Polis was appointed as C.F.'s minor's counsel and told Judge Barton that it was not in C.F.'s best interest to testify. (*See* Compl. ¶¶ 30, 37.) Albee examined the computer Mark allegedly took from Kelly's house and produced a log showing that Mark had hacked Kelly's computer. (*See id.* ¶ 34.) Judge Barton quashed Mark's subpoena to allow his expert to examine Kelly's computer, (*see id.* ¶ 40), and, based on Polis's and Albee's representations, Judge Barton concluded that Mark had engaged in cyberstalking, resulting in the issuance of a DVRO against Mark. (*See id.* ¶¶ 38–41.) As a result, Kelly, through Cleary and Layon, succeeded in obtaining a DVRO against Mark, (*see id.* ¶ 41), and Mark lost custody of C.F. (*See id.* ¶ 42.)

Although these allegations are facially innocuous, Mark contends that they were part of a "'private judge' scheme" similar to that alleged in *Vena v. Moore, Schulman & Moore*, No. 22-cv-437 W (BLM), a separate case filed in this District by another dissatisfied family court litigant on April 1, 2022. (*See* Compl. ¶ 32.) In *Vena*, the plaintiff sued Julie Westerman, the attorney who represented his wife in their marriage dissolution and child custody proceeding, and her firm, MSM. *See* Complaint ¶¶ 1–4, 10–12, *Vena v. Moore, Schulman & Moore*, No. 22-cv-437 W (BLM) (S.D. Cal. filed Apr. 1, 2022), ECF No. 1 (the "*Vena* Compl."). Because of the COVID-19 pandemic, the plaintiff and his ex-wife

agreed to have their case heard by a privately compensated temporary judge ("PCTJ"), the Honorable Jeannie Lowe (Ret.), through JAMS. *See id.* ¶¶ 13–21. Unbeknownst to the plaintiff and his counsel, MSM sent at least eight new or expanded matters to Commissioner Lowe beginning shortly after she had signed her disclosure checklist and continuing through the pendency of the child-custody trial. *See id.* ¶¶ 22–27. These matters likely generated tens of thousands of dollars for Commissioner Lowe, *see id.* ¶ 38, and caused Commissioner Lowe to favor the plaintiff's ex-wife's counsel. *See id.* ¶¶ 39–40. When the conflict came to light, Commissioner Lowe recused and the Honorable Victor Torres voided all of her orders. *See id.* ¶¶ 43–47.

The only nexus between *Vena* and this case, however, is that Polis was employed by the same firm—MSM—as the *Vena* plaintiff's ex-wife's attorney. (*Compare* Compl. ¶ 4, *with Vena* Compl. ¶ 3–4.) Unlike Commissioner Lowe, Judge Barton was still an active family court judge when he made the decisions Mark challenges here. Accordingly, he was not paid by the parties or their counsel. The Court takes judicial notice of the facts that Judge Barton retired on April 21, 2021, https://www.sdcourt.ca.gov/news/san-diego-superior-court-judge-jeffrey-barton-retires, and that he now serves as a mediator and arbitrator through Judicate West, https://www.judicatewest.com/adr/jeffrey-barton; (*see also* Compl. ¶ 31), a different alternative dispute organization than the one that employed Commissioner Lowe. Further, unlike in *Vena*, Mark fails to identify a single matter that Polis or MSM referred to Judge Barton following his employment with Judicate West.

In short, the only specific facts Mark alleges to support the purported conspiracy are that (1) Judge Barton ruled against Mark on the DVRO and other matters; and (2) a separate action was filed in this District by another dissatisfied family court litigant plausibly alleging that a retired family court judge employed by JAMS accepted, without disclosure, additional business from the same firm that employed Polis, who was appointed as minor's counsel to C.F. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *See Iqbal*, 556 U.S. at 678. Not only does Mark fail to allege

specific, concrete facts supporting the existence of a conspiracy, but also even construing these facts most favorably to Mark, they do not suffice to give rise to a plausible inference that Defendants conspired against Mark. *See, e.g.*, *Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988) ("[The plaintiff]'s conclusory allegations that [the defendant] Judge . . . conspired with the [defendant] law firms are insufficient to support his section 1983 claim." (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam))); *Ricotta v. California*, 4 F. Supp. 2d 961, 984 (S.D. Cal. 1998) ("While Plaintiff makes general allegations of bribery and conspiracy they are conclusory and fall far short of stating a cause of action."), *aff'd*, 173 F.3d 861 (9th Cir. 1999); *see also Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of U.S.*, 577 F. Supp. 3d 1106, 1132 (D. Or. 2021) ("[T]he Court will not accept as plausible these sorts of speculative, conclusory, and unsupported allegations." (first citing *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208–09 (9th Cir. 2005); then citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011))); *Wescott v. Stephens*, No. 18-CV-07407-DMR, 2019 WL 1387715, at *4 (N.D. Cal. Mar. 12) ("Plaintiff refers to an 'Extrajudicial Agreement,' but the only allegations he puts forth to support the existence of such an agreement are various rulings made by the state court judges . . . . There are no plausible allegations suggesting that the judges acted corruptly or in concert with Defendants."), *report and recommendation adopted*, No. 18-CV-07407-HSG, 2019 WL 1386577 (N.D. Cal. Mar. 27, 2019); *Gozzi v. Cnty. of Monterey*, No. 5:14-CV-03297-LHK, 2014 WL 6988632, at *13 (N.D. Cal. Dec. 10, 2014) ("Plaintiff's bare allegations of bribery are insufficient to be considered properly pled. . . . Moreover, Plaintiff points to no evidence that would make his bribery claims plausible."). The Court therefore **GRANTS** Defendants' Motions to Dismiss and **DISMISSES** Plaintiffs' first cause of action under Section 1983 for failure to plead a plausible conspiracy.

ii. State Action

Because he brings his Section 1983 claim under the Fourteenth Amendment, Mark must also allege a state action. *See, e.g.*, *Lugar*, 457 U.S. at 924. In determining whether there has been an action that is fairly attributable to the State, courts apply a two-part test.

*See id.* at 937. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.*

"When addressing whether a private party acted under color of law, [courts] . . . start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (citing *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *Price v. Hawai'i*, 939 F.2d 702, 707–08 (9th Cir. 1991)). "[F]or private conduct to constitute governmental action, 'something more' must be present." *Id.* (citing *Lugar*, 457 U.S. at 939). "The Supreme Court has developed four different tests that aid [courts] in identifying state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir.) (internal quotation marks omitted) (quoting *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020)), *cert. denied*, 142 S. Ct. 337 (2021). "The '[s]atisfaction of any one test is sufficient to find state action,' but '[a]t bottom, the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (alterations in original) (quoting *Rawson*, 975 F.3d at 747–48).

Here, Mark alleges that Defendants Polis, Cleary, Kelly, Layon, and Albee—despite being private citizens—are state actors for purposes of Section 1983 under the joint action test.[5] (*See* Compl. ¶¶ 43–51.) The joint action "test asks 'whether the government has so

---

[5] To the extent Mark contends that attorneys Polis, Cleary, and Layon are state actors as "officers of the court," (*see* Compl. ¶ 43 & n.3), that argument is a nonstarter—"the status as an attorney or an officer of the court is not sufficient to bring [the p]laintiffs' actions under color of state law." *See Major v. Stocker, Smith, Lucianti & Staub*, No. CV-09-0140-FVS, 2009 WL 2595594, at *2 (E.D. Wash. Aug. 19, 2009); *accord Gozzi*, 2014 WL 6988632, at *12 ("[A]lthough lawyers are licensed by the state, this licensing does not bestow any special state-possessed powers such that attorneys are deemed to have

far insinuated itself into a position of interdependence with a private entity that the private entity must be recognized as a joint participant in the challenged activity.'" *Pasadena Republican Club*, 985 F.3d at 1167 (quoting *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1210 (9th Cir.), *as amended on denial of reh'g and reh'g en banc* (Aug. 23, 2002)). "A private entity may be considered a state actor only if its particular actions are inextricably intertwined with those of the government." *Id.* (internal quotation marks omitted) (quoting *Brunette*, 294 F.3d at 1211). "A conspiracy between the State and a private party to violate another's constitutional rights may also satisfy the joint action test." *Brunette*, 294 F.3d at 1211 (first citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970); then citing *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983); and then citing *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1546–47 (9th Cir. 1989) (*en banc*)). Consequently, "[p]rivate parties can be considered to act under color of state law if the official act of a judge was the product of a corrupt conspiracy involving the private parties' bribery of that judge." *Casavelli v. Johanson*, No. CV-20-00497-PHX-JAT, 2020 WL 7643170, at *5 (D. Ariz. Dec. 23, 2020) (citing *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)), *aff'd*, No. 21-15051, 2022 WL 4115495 (9th Cir. Sept. 9, 2022).

As discussed above, *see supra* Section II.B.1.a.ii, Mark fails plausibly to allege a conspiracy among the Individual Defendants. Accordingly, Mark also fails to allege the requisite state action for his Section 1983 claim. *See, e.g.*, *Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988) ("Invoking state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement." (citing *Lugar*, 457 U.S. at 939 n.21)); *Casavelli*, 2020 WL 7643170, at *5 (concluding that the plaintiffs failed to allege that the defendants were state actors where the plaintiffs failed to allege specific facts that bribery of Superior Court judges had occurred); *Wescott*, 2019 WL 1387715, at *4 ("[M]erely resorting to the courts and being

---

acted under color of law." (first citing *Sinclair v. Spatocco*, 452 F.2d 1213, 1213 (9th Cir. 1971); then citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 319 n.9 (1981))).

on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." (quoting *Dennis*, 449 U.S. at 28)); *Major*, 2009 WL 2595594, at *3 ("Plaintiffs have not alleged any facts indicating how or when Defendants conspired with each other, or any other specific fact indicating a conspiracy besides Plaintiffs' unsupported claim that the defendant lawyers bribed or corrupted Judge Whaley and/or his staff. Plaintiffs' uncorroborated allegations are insufficient to turn Defendants into state actors."); *Ricotta*, 4 F. Supp. 2d at 984 ("Plaintiff does not delineate for the Court how each Defendant was directly involved and participated in the conspiracy. Such specificity is necessary for Plaintiff to show that each individual so cooperated with the Judges as to come under the color of state law."). The Court therefore **GRANTS** Defendants' Motions to Dismiss and **DISMISSES** Mark's first cause of action under Section 1983 for failure to allege that Defendants were state actors.

b. 42 U.S.C. § 1985

Mark also alleges violations of the first and second clauses of Section 1985(2) and the first clause of Section 1985(3). (*See* Compl. ¶¶ 55–57.)

i. 42 U.S.C. § 1985(2)

"Section 1985(2) contains two clauses that give rise to separate causes of action." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993). Mark invokes both. (*See* Compl. ¶¶ 55–56.)

> The first clause concerns access to *federal* courts, giving rise to a cause of action where
>
> > two or more persons in any State or Territory conspire [A] to deter, by force, intimidation, or threat, any party or witness *in any court of the United States* from attending such court, or from testifying to any matter pending therein, freely, fully and truthfully, or [B] *to injure such party or witness in his person or property on account of his having so attended or testified* . . . .

*Portman*, 995 F.2d at 908–09 (emphasis in original) (quoting 42 U.S.C. § 1985(2)). "A claim under section 1985(2), part one, is composed of three essential elements: (1) a

conspiracy between two or more persons, (2) to deter a witness by force, intimidation, or threat from attending federal court or testifying freely in a matter there pending, which (3) causes injury to the claimant." *Rutledge v. Ariz. Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988) (footnote omitted) (citing *David v. United States*, 820 F.2d 1038, 1040 (9th Cir. 1987), *abrogated in part on other grounds by Haddle v. Garrison*, 525 U.S. 121 (1998); *Miller v. Glen & Helen Aircraft, Inc.*, 777 F.2d 496, 498 (9th Cir. 1985); *Chahal v. Paine Webber Inc.*, 725 F.2d 20, 23 (2d Cir. 1984)).

Defendants Polis, Cleary, Kelly, and Albee contend that Mark's claims under the first clause of Section 1985(2) must be dismissed because Mark fails to allege that Defendants acted against him because he attended or testified in a federal court matter. (*See* Polis Mem. at 9; Cleary Mem. at 12–13, Kelly Mem. at 8; Albee Mem. at 5.) Indeed, Mark's Complaint alleges that his first cause of action is based on actions taken "in the course of a contentious child custody case in San Diego Superior Court," (*see* Compl. ¶ 60), not federal court. "Because [Mark] has not identified any federal proceeding connected with his claims, [he] has failed to state a cause of action under § 1985(2)'s first clause." *See Deleo v. Rudin*, 328 F. Supp. 2d 1106, 1112 (D. Nev. 2004).

The second clause concerns access to *state or territorial* courts, giving rise to a cause of action where

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice *in any State or Territory,* with intent to deny to any citizen *the equal protection of the laws* . . . .

*Portman*, 995 F.2d at 909 (emphasis in original) (quoting 42 U.S.C. § 1985(2)). "It is well-settled that the equal protection language of the second clause of section 1985(2) [requires] an allegation of class-based animus for the statement of a claim under that clause." *Id.* (alteration in original and internal quotation marks omitted) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1029 (9th Cir. 1985)) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Defendants Polis, Cleary, Kelly, Judge Barton, and Albee argue that Mark fails to state a claim under the second clause of Section 1985(2) because he fails to allege that they

were motivated by class-based, invidiously discriminatory animus. (*See* Polis Mem. at 10; Cleary Mem. at 13; Kelly Mem. at 8; Barton Mem. at 10; Albee Mem. at 5.) Defendants are correct—rather than alleging that Defendants were motivated by class-based animus, Mark alleges that Defendants were motivated by their desire to obtain favorable decisions and money. (*See* Compl ¶¶ 30–31, 50, 60, 64–65.) Mark therefore fails to allege facts sufficient to state a claim under the second clause of Section 1985(2). *See, e.g.*, *Wilkins v. Alameda Cnty.*, No. C 14-2516 LHK (PR), 2014 WL 5035445, at *3 (N.D. Cal. Oct. 7, 2014) (dismissing claim under second clause of § 1985(2) where the "plaintiff's allegations demonstrate that [the] plaintiff is not asserting any racial or class-based animus, but claims based on litigant status and literacy" (citing *United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837–39 (1983))). Because Mark fails to state a claim under the first or second clause of Section 1985(2), the Court **GRANTS** Defendants' Motions to Dismiss and **DISMISSES** Mark's claims under Section 1985(2).

ii. 42 U.S.C. § 1985(3)

"To state a cause of action under [the first clause of] § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin*, 403 U.S. at 102–03). As with the second clause of Section 1985(2), "the first clause of § 1985(3) requires a showing of discriminatory animus, because the 'underlying activity . . . is not institutionally linked to federal interests and . . . is usually of primary state concern.'" *See Bretz*, 773 F.2d at 1028 (quoting *Kush v. Rutledge*, 460 U.S. 719, 725 (1983)) (citing *Mollnow v. Carlton*, 716 F.2d 627, 630 (9th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984)).

Defendants Polis, Cleary, Kelly, Judge Barton, and Albee again contend that Mark's Section 1985(3) claim must be dismissed because Mark fails to allege that their actions were motivated by class-based animus. (*See* Polis Mem. at 10; Cleary Mem. at 13; Kelly

Mem. at 8; Barton Mem. at 10; Albee Mem. at 6.) As before, *see supra* Section II.B.3.b.i, "[a] cause of action under the first clause of § 1985(3) cannot survive a motion to dismiss absent an allegation of class-based animus." *See Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1095 (9th Cir. 2000) (citing *Bretz*, 773 F.2d at 1028). Indeed, as above, *see supra* Section II.B.3.b.i, Section 1985(3) does not apply where—as here—"the conduct was motivated by a concern for economic well-being." *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1538 (9th Cir. 1992); *accord Whitehorn v. FCC*, 235 F. Supp. 2d 1092, 1102 (D. Nev. 2002) ("'[C]onspiracies motivated by economic or commercial animus' are not cognizable under § 1985(3)." (alteration in original) (quoting *Scott*, 463 U.S. at 838)), *aff'd*, 63 F. App'x 346 (9th Cir. 2003). For all these reasons, the Court **GRANTS** Defendants' Motions to Dismiss and **DISMISSES** Mark's claims under the first clause of Section 1985(3).

2. *Immunity from Liability*

a. *Noerr-Pennington* Doctrine

Defendants Polis, Layon, Cleary, and Kelly all contend that Mark's first cause of action must be dismissed under the *Noerr-Pennington* doctrine. (*See* Polis Mem. at 10–12; ECF No. 6-1 ("Layon Mem.") at 8–9; Cleary Mem. at 13–14; Kelly Mem. at 9–10.) "The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I). "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.* (quoting *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)). "[T]he *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Id.* at 931 (citing *White*, 227 F.3d at 1231). "Under the *Noerr-Pennington* rule of statutory construction, [courts] must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition

Clause unless the statute clearly provides otherwise." *Id.* "Though the *Noerr-Pennington* doctrine first arose in the antitrust context, [the Ninth Circuit] ha[s] extended its application, including to § 1983 claims." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir.) (citing *Manistee*, 227 F.3d at 1092), *cert. denied*, 143 S. Ct. 212 (2022)

"To determine whether a defendant's conduct, which allegedly violates a statute, is immunized under *Noerr-Pennington*, [courts] apply a three-step analysis to determine: (1) 'whether the lawsuit imposes a burden on petitioning rights,' (2) 'whether the alleged activities constitute protected petitioning activity,' and (3) 'whether the statute[ ] at issue may be construed to [avoid] that burden.'" *Id.* (second and third alterations in original) (quoting *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009)). "If the answer at each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*." *Id.* (citing *Sosa*, 437 F.3d at 932). "But such immunity is not absolute, as 'neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions.'" *Id.* (quoting *Sosa*, 437 F.3d at 932). Courts "decide whether the sham exception applies within step two of the three-part analysis." *Id.* (citing *Sosa*, 437 F.3d at 938).

<u>Step One</u>: "Step one asks 'whether the success of [[Mark]'s § 1983] lawsuit would constitute a burden on petitioning rights.'" *B&G Foods*, 29 F.4th at 535 (first alteration in original) (quoting *Kearney*, 590 F.3d at 645). "In conducting this inquiry, [courts] do not consider any alleged misconduct tied to the petitioning activities." *Id.* (citing *Kearney*, 590 F.3d at 645).

Here, Mark alleges misconduct on behalf of attorneys, guardians *ad litem*, expert witnesses, and his ex-wife in the course of litigating his ex-wife's petition for a DVRO. (*See generally* Compl. ¶¶ 23–42, 60–88.) "It is undisputed that those proceedings represent a petition to the government." *See Kearney*, 590 F.3d at 645. If Mark were to succeed on his present challenges to Defendants' conduct, he would burden Defendants' ability to engage in family law petitioning. *See, e.g.*, *id.* (concluding that lawsuit asserting federal claims "challeng[ing] . . . discovery communications, interactions with expert witnesses and contractors, and statements to the court" against firm and attorneys who filed eminent

domain proceeding on behalf of their client "place[d] a burden on [the client]'s ability to bring such actions).

Step Two: The "focus at step two is whether Defendants' conduct qualifies as '*protected* petitioning activity.'" *B&G Foods*, 29 F.4th at 535–36 (emphasis in original) (quoting *Sosa*, 437 F.3d at 933). "In making this determination, [the court] must first decide whether the Petition Clause extends to Defendants' conduct." *Id.* at 536 (citing *Sosa*, 437 F.3d at 933–38). "If it does, [the court] next decide[s] whether the sham exception to *Noerr-Pennington* applies." *Id.* (citing *Sosa*, 437 F.3d at 938).

Here, Defendants' conduct was—at the very least—incidental to Kelly's petitions for dissolution and child custody and for the Second and Third DVROs. *See, e.g.*, *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184–85 (9th Cir. 2005) (concluding that discovery was conduct incidental to a petition (first citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004); then citing *Noerr*, 365 U.S. at 143–44)). The question, therefore, is whether the underlying lawsuit was a sham such that Defendants' conduct is not entitled to *Noerr-Pennington* protection.

The Ninth Circuit "ha[s] identified three circumstances in which the sham exception might apply in the litigation context:"

> [F]irst, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

*B&G Foods*, 29 F.4th at 537–38 (second alteration in original) (quoting *Sosa*, 437 F.3d at 938). Although he bears the burden of establishing that Defendants' conduct falls outside the protection of *Noerr-Pennington*, *see, e.g.*, *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1144 (S.D. Cal. 2020) ("*Evans Hotels I*") (first citing *Boone v. Redev. Agency of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988); then citing *Sosa*, 437 F.3d

at 942), Mark does not explicitly address any of the three sham litigation exceptions. (*See generally* Initial Opp'n.) The Court could interpret Mark's silence as a concession that Defendants' petitioning activity was not a sham. *See, e.g.*, *Fink v. Ohannessian*, No. EDCV2101124CASRAO, 2023 WL 4680782, at *7 (C.D. Cal. Apr. 27, 2023) ("As the Court previously warned Plaintiff, his failure to address this argument in opposition to the Motion will be deemed a concession as to the merits of the argument." (first citing *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013); then citing *Adams v. Starbucks Corp.*, No. SACV 20-00225 JVS(KESx), 2020 WL 4196248, at *6 (C.D. Cal. July 9, 2020))). Even addressing each of the exceptions on the merits, however, it is clear that Mark fails to allege facts demonstrating that they apply to Defendants' conduct.

"Under the first exception, Defendants' 'lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.'" *B&G Foods*, 29 F.4th at 538 (quoting *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)). "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*." *Id.* (quoting *Pro. Real Est.*, 508 U.S. at 60). "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* (quoting *Pro. Real Est.*, 508 U.S. at 60). "The subjective element can be satisfied by showing that Defendants 'used government processes, as opposed to the outcome of those processes, as a mechanism to injure' [the plaintiff]." *Id.* (quoting *Empress*, 419 F.3d at 1057).

Based on the allegations in Mark's Complaint and the documents incorporated therein by reference, Defendants' underlying lawsuit was not objectively baseless. Judge Weinreb granted Kelly the First DVRO on November 27, 2018, (*see* Layon Ex. 1), before the alleged conspiracy with Judge Barton began in October 2019. By Mark's own admission, the First DVRO would also have "carrie[d] a strong presumption against child custody." (*See, e.g.*, Compl. ¶ 5.) "Given all this, an objective litigant could have concluded that Defendants' suit was 'reasonably calculated to elicit a favorable outcome.'"

*See B&G Foods*, 29 F.4th at 538 (quoting *Pro. Real Est. Invs.*, 508 U.S. at 60); *see also Pro. Real Est. Invs.*, 508 U.S. at 60 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."). "Because [Mark] has failed to establish the objective element, [the Court] need[s] not reach the subjective element." *See B&G Foods*, 29 F.4th at 538 (citing *Pro. Real Est. Invs.*, 508 U.S. at 60).

"In *USS-POSCO Industries v. Contra Costa County Building & Construction Trades Council, AFL-CIO*, 31 F.3d 800 (9th Cir. 1994), [the Ninth Circuit] explained that the second sham exception applies 'where the defendant is accused of bringing a whole series of legal proceedings' without regard to the merits[.]" *Id.* at 539 (quoting *USS-POSCO*, 31 F.3d at 811). "In such cases, 'the question is not whether any one [suit] has merit— some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival.'" *Id.* (alterations in original) (quoting *USS-POSCO*, 31 F.3d at 811). "To determine whether the exception applies, [courts] ask: 'Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?'" *Id.* (quoting *USS-POSCO*, 31 F.3d at 811).

Here, all of Defendants' actions occurred in the context of a single child custody proceeding, (*see, e.g.*, Compl. ¶ 23), rather than "a whole series of legal proceedings." *See USS-POSCO*, 31 F.3d at 811. Further, the second sham litigation exception applies where multiple lawsuits "are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *See id.* Here, Kelly filed for dissolution and child custody, which "has no relationship to market competition or business." *See Rupert v. Bond*, 68 F. Supp. 3d 1142, 1158 (N.D. Cal. 2014). The second sham litigation exception is therefore inapplicable.

This leaves the final sham litigation exception. Although superficially the most promising given Mark's allegations of judicial deception, (*see, e.g.*, Compl. ¶ 54), "there is no 'conspiracy' exception to the *Noerr-Pennington* doctrine that applies when

government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights." *Evans Hotels, LLC v. Unite Here! Loc. 30*, No. 18-CV-2763-RSH-AHG, 2023 WL 4998062, at *9 n.11 (S.D. Cal. July 6, 2023) ("*Evans Hotels II*") (quoting *Empress*, 419 F.3d at 1057) (citing *City of Columbia v. Omni Outdoor Adver. Inc.*, 499 U.S. 365, 383 (1991)); *accord Winters v. Jordan*, No. 2:09-CV-00522JAMKJN, 2010 WL 2838634, at *8 n.13 (E.D. Cal. July 20) (citing *Empress*, 419 F.3d at 1057), *report and recommendation adopted*, 2010 WL 3636221 (E.D. Cal. Sept. 14, 2010), *aff'd*, 479 F. App'x 742 (9th Cir. 2012); *Yeager v. City of San Diego*, No. 05CV2089-BEN (WMC), 2007 WL 7032933, at *8 (S.D. Cal. June 1, 2007) (first citing *Empress*, 419 F.3d at 1057; then citing *Omni*, 499 U.S. at 382–83), *aff'd*, 310 F. App'x 133 (9th Cir. 2009); *see also Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14-2179-MMM JEM, 2015 WL 349443, at *11 (C.D. Cal. Jan. 23, 2015) (collecting cases).

Further, "a heightened pleading standard applies to the third sham exception under Rule 9(b)[,]" *B&G Foods N. Am., Inc. v. Embry*, 638 F. Supp. 3d 1122, 1133 (E.D. Cal. 2022) (citing Fed. R. Civ. P. 9(b); *Kearney*, 590 F.3d at 646–47), meaning Mark "must state with particularity the circumstances constituting fraud." *Id.* (quoting Fed. R. Civ. P. 9(b)). As discussed above, *see supra* Section II.B.3.a.i, Mark's allegations fail to meet this standard. Accordingly, Mark fails plausibly to plead that Defendants' conduct falls within the sham exception to *Noerr-Pennington* protection. *See, e.g.*, *Evans Hotels II*, 2023 WL 4998062, at *9 n.11 (concluding that the plaintiffs failed to plead that the third sham exception applied where their "allegations of 'extortion' and 'bribery' are conclusory"); *Campos v. 1169 Palms LLC*, No. CV 21-5625-JFW(KSX), 2022 WL 17369631, at *5 (C.D. Cal. May 23, 2022) ("Finally, although [the plaintiff] argues that the *Noerr-Pennington* doctrine does not apply because . . . the doctrine does not 'immunize defendants from allegedly making misrepresentations during legal proceedings,' [the plaintiff] has failed to provide any facts – either in his FAC or in his Opposition – that would support those arguments. Instead, [the plaintiff] relies on mere conclusory

allegations and speculation."); *Borges v. Cnty. of Mendocino*, 506 F. Supp. 3d 989, 1002 (N.D. Cal. 2020) ("Further, the allegation that [the defendants] 'decided to use a false allegation of water diversion as a pretext to obtain a warrant and seize the plaintiffs' property' is conclusory and devoid of specific facts showing that [the defendants] conspired against plaintiffs"), *aff'd*, No. 22-15673, ___ F. App'x ___, 2023 WL 2363692 (9th Cir. Mar. 6, 2023).

Step Three: "[T]he *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *B&G Foods*, 29 F.4th at 539–40 (alteration in original) (quoting *Sosa*, 437 F.3d at 931). "Under the *Noerr-Pennington* rule of statutory construction, [the court] must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Id.* at 540 (quoting *Sosa*, 437 F.3d at 931). "Thus, [the court] ask[s] at step three whether the statute—here 42 U.S.C. §[§] 1983 [and 1985]—can be construed to avoid burdening Defendants' Petition Clause rights." *Id.* (citing *Sosa*, 437 F.3d at 931, 932). The Ninth Circuit "determined in *Manistee* that § 1983 cannot burden protected petitioning rights." *Id.* (citing *Sosa*, 437 F.3d at 932 n.6). Consequently, "the *Noerr-Pennington* doctrine bar[s] § 1983 claims based on any protected petitioning conduct." *Id.* (citing *Manistee*, 227 F.3d at 1093).

Conclusion: For these reasons, Mark has failed to meet his burden of pleading that Defendants Polis, Layon, Cleary, and Kelly's conduct is not entitled to First Amendment protection under the *Noerr-Pennington* doctrine. The Court therefore **GRANTS** Defendants Polis, Layon, Cleary, and Kelly's Motions to Dismiss and **DISMISSES** Mark's first cause of action against them under the *Noerr-Pennington* doctrine.

b. Judicial Immunity

Defendant Judge Barton claims that, as a judge, he is absolutely immune from suit. (*See* Barton Mem. at 6–8.) This is because "[a] long line of [Supreme Court] precedents acknowledges that, generally, a judge is immune from a suit for money damages." *See*

*Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 915 (9th Cir. 2021) (second alteration in original) (quoting *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam)), *cert. denied*, 142 S. Ct. 2836 (2022). "The judicial or quasi-judicial immunity available to federal officers is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable relief." *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1394 (9th Cir. 1987). "Courts have articulated only two circumstances in which judicial immunity does not apply." *Acres Bonusing*, 17 F.4th at 915. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (quoting *Mireles*, 502 U.S. at 11–12).

Mark contends that the second exception applies here because "[a]n agreement to accept bribes and subvert the legal process is not 'a function normally performed by a judge.'" (*See* Barton Opp'n at 17.) But "judicial immunity applies even to alleged acts of conspiracy or bribery." *Casavelli v. Johanson*, No. CV-20-00497-PHX-JAT, 2020 WL 7643170, at *7 (D. Ariz. Dec. 23, 2020) (citing *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986)), *aff'd*, No. 21-15051, 2022 WL 4115495 (9th Cir. Sept. 9, 2022) (mem. dispo.); *see also Gozzi*, 2014 WL 6988632, at *7 (dismissing with prejudice § 1983 claim against judicial defendants because "even if the Judicial Defendants had acted corruptly and received bribes, as Plaintiff appears to allege, they would still be immune from Plaintiff's § 1983 claim" (first citing *Dennis*, 449 U.S. at 27; then citing *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985))). Instead, "[w]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Acres Bonusing*, 17 F.4th at 915 (second alteration in original) (quoting *Mireles*, 502 U.S. at 12). Ultimately, the court must focus on the judge's "ultimate acts" rather than his or her "underlying actions"—"[a]s long as the judge's ultimate acts are judicial actions taken within the court's subject matter juris[]diction, immunity applies." *See Ashelman*, 793 F.2d at 1078.

Although the "underlying acts" of which Mark complains are conspiracy and bribery, the "ultimate acts" are Judge Barton's decisions "to prevent [C.F.] from testifying, to accept any proffered computer expert findings . . . , to prevent Mark from ever gaining access to the computer in question, and, ultimately, to grant a DVRO and attorney fees against Mark." (*See* Compl. ¶ 67.) Such decisions and rulings "are all functions 'normally performed by a judge' and for which the defendants 'dealt with the judge in his judicial capacity,'" *see Acres Bonusing*, 17 F.4th at 916 (quoting *Mireles*, 502 U.S. at 12), and "a conspiracy between judge and [a party] to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges." *See id.* (alteration in original) (quoting *Ashelman*, 793 F.2d at 1078). The Court therefore concludes that Judge Barton is entitled to absolute judicial immunity and **GRANTS** Judge Barton's Motion to the extent it seeks dismissal of Plaintiffs' first cause of action on that ground.

*3. Statute of Limitations*

Defendants Cleary and Judge Barton also argue that Mark's first cause of action is time-barred. (*See* Cleary Mem. at 8–10; Barton Mem. at 4–5.) As with their *Rooker-Feldman* doctrine argument, Mark failed to respond to Cleary's argument, (*see generally* Initial Opp'n), but does address the statute of limitations in response to Judge Barton's Motion. (*See* Barton Opp'n at 11–13.) Indeed, Mark does not contest that—at best—his Section 1983 and 1985 causes of action are governed by a two-year statute of limitations,[6] (*see id.* at 11); rather, Mark contends that the two-year statute of limitations has not run either because he did not discover "the private-judging-contracts-as-bribery scandal" until he learned of the case *Vena v. Moore, Schulman & Moore, APC*, No. 22-cv-437-W (BLM)

---

[6] Cleary argues that the statute of limitations may be only one year under California Code of Civil Procedure 340.6, which covers "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services." Because the Court concludes that Mark's action is time-barred even under the two-year limitations period for personal injury actions, *see* Cal. Civ. Proc. Code § 335.1, the Court need not determine whether the one-year limitations period applies to Mark's claims again Cleary.

(S.D. Cal. filed Apr. 1, 2022), in September 2022, (*see* Barton Opp'n at 12), or because he is entitled to equitable tolling. (*See id.*)

"Equitable tolling requires: (1) timely notice to the defendant of the claim; (2) lack of prejudice to the defendant; and (3) 'reasonable and good faith conduct on the part of the plaintiff.'" *Bakalian v. Cent. Bank of Republic of Turkey*, 932 F.3d 1229, 1235 (9th Cir. 2019) (quoting *Addison v. State*, 21 Cal. 3d 313, 319 (1978)). "The 'discovery rule,' on the other hand, assumes that the elements of accrual including harm exist, but tolls the ruling of the statute until the plaintiff is on inquiry notice of its injury (and its wrongful cause)." *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988); *CAMSI IV v. Hunter Tech. Corp.*, 230 Cal. App. 3d 1525, 1536 (1991)). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017) (quoting *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004)). "The discovery rule requires the plaintiff to be diligent in discovering the critical facts of the case." *Id.* (citing *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999)). Although the statute of limitations is an affirmative defense for which the defendant generally has the burden of proof, a plaintiff must plead the facts necessary to toll the limitations period where a claim is time-barred on the face of the complaint. *See, e.g.*, *Bakalian*, 932 F.3d at 1235 (equitable tolling) (citing *Long v. Forty Niners Football Co.*, 33 Cal. App. 5th 550, 555 (2019)); *Cal. Sansome*, 55 F.3d at 1406 (discovery rule) (citing *CAMSI IV*, 230 Cal. App. 3d at 1536).

Here, it would appear that Mark's first cause of action accrued, at the latest, when Judge Barton denied Mark's motion for reconsideration in September 2020. (*See* Compl. ¶ 78.) Absent tolling, the statute of limitations therefore ran in September 2022, approximately six months before Mark filed this action on March 6, 2023. (*See generally* ECF No. 1.) Mark therefore must plead specific facts to support equitable tolling or application of the discovery rule. *See Bakalian*, 932 F.3d at 1235; *Cal. Sansome*, 55 F.3d at 1406. As Judge Barton notes, (*see* Barton Reply at 2), Mark fails to allege any facts

supporting the application of either doctrine.[7] The Court therefore **GRANTS** Cleary's and Judge Baton's Motions and **DISMISSES WITHOUT PREJUDICE** Mark's first cause of action as time-barred.

*4. Leave to Amend*

"If a motion to dismiss is granted, '[the] district court should grant leave to amend even if no request to amend the pleading was made[.]'" *B&G Foods*, 638 F. Supp. 3d at 1134 (alterations in original) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016)). "However, leave to amend should be denied when the plaintiff could not amend the complaint to state a viable claim without contradicting the complaint's original allegations." *Id.* (citing *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 845–46 (9th Cir. 2016)). "The key question in this case is futility." *Id.* (citing *B&G Foods*, 29 F.4th at 541).

The deficiencies with Mark's sole federal cause of action are numerous—the claims are time-barred; Defendants are immune from liability; and it appears that Mark will be unable to plead more than one element of each of his claims under 42 U.S.C. §§ 1983, 1985(2), and 1985(3). Because amendment would be futile, the Court **DENIES** Mark leave to amend his first cause of action.[8]

---

[7] The Court notes that Mark explains in his Opposition to Judge Barton's Motion that he first "discovered the private-judging-contracts-as-bribery scandal . . . on in about September 2022, when he learned of the *Vena* . . . case pending in this District." (*See* Barton Opp'n at 12.) Although the *Vena* case is mentioned in Mark's Complaint, (*see* Compl. ¶ 32), Mark does not allege that it was his discovery of *Vena* that first put him on notice of his first cause of action here. (*See generally id.*) "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (emphasis in original) (quoting *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)). Instead, "[f]acts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Id.* (citing *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137–38 (9th Cir. 2001)).

[8] The Court is also troubled by the fact that, by signing and filing his Complaint, Mark "certifie[d] that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support." *See* Fed R. Civ. P. 11(b)(3). The alleged conspiracy underlying Mark's Complaint is based entirely on the *Vena* complaint which—for the reasons discussed above, *see supra* Section II.B.3.a.i—appears to have only the most superficial of

### C. *State Law Causes of Action*

Having dismissed Plaintiffs' sole surviving federal cause of action, *see supra* Section II.A, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' state law causes of action for intentional and negligent infliction of emotional distress. *See* 28 U.S.C. § 1367(c)(3); *see also, e.g.*, *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3)) (citing *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998))).

## ANTI-SLAPP MOTIONS

In addition to their Rule 12(b)(6) motion to dismiss Mark's federal causes of action, Defendants Polis, Layon, Cleary, Kelly, and Albee seek to strike his state law causes of action under California's Anti-SLAPP statute. (*See* ECF Nos. 5-1 at 12–17; 6-1 at 12–19; 7-1 at 17–22; 15-1 at 10–14; 46-1 at 6–8.) They also seek to recover the fees incurred in bringing their Anti-SLAPP Motions pursuant to California Code of Civil Procedure § 425.16(c)(1). (*See, e.g.*, ECF Nos. 6-1 at 19; 7-1 at 22.)

Because the Court has declined to exercise its jurisdiction over Plaintiffs' state law claims, the Court **DENIES AS MOOT** the Anti-SLAPP Motions. *See, e.g.*, *McMillan v. Chaker*, 791 F. App'x 666, 667 (9th Cir. 2020) ("[T]he district court did not abuse its discretion by refusing to exercise supplemental jurisdiction over the remaining state law claim after properly dismissing the RICO claims. . . . And without a state law claim, it was proper for the district court to decline to address the anti-SLAPP motion." (citing *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010))); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1097 (2015) (denying as moot anti-SLAPP motion after declining to exercise supplemental jurisdiction over remaining state law claims), *aff'd* 697

---

connections to Mark and Kelly's underlying marriage dissolution and child custody matter. Mark's serious allegations against Defendants border on the frivolous and sanctionable.

F. App'x 526 (9th Cir. 2017); *Fortinos v. Sills*, No. C 12-3828 MEJ, 2012 WL 5870681, at *5 & n.9 (N.D. Cal. Nov. 19, 2012) (same); *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1157 (C.D. Cal. 2010) (same); *Ravet v. Solomon, Ward, Seidenwurm & Smith, LLP*, No. 07 CV 0031 JM, 2007 WL 2088381, at *7 (S.D. Cal. July 17, 2007) (same).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss; **DISMISSES WITH PREJUDICE** Plaintiffs' sole federal cause of action; **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' remaining state law causes of action; and **DENIES AS MOOT** Defendants Polis, Layon, Cleary, Kelly, and Albee's Anti-SLAPP Motions. Because there are no further filing deadlines, the Court also **DENIES AS MOOT** Mark's E-filing Motion.

**IT IS SO ORDERED.**

Dated: December 12, 2023

Honorable Todd W. Robinson
United States District Judge